IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

RICHARD WITTAKER, et al.,

                    Plaintiffs,

v.                               CIVIL ACTION NO.   2:22-cv-00167

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss filed by Defendants Angela Athey ("Defendant Athey") and Larry Warden ("Defendant Warden").  (ECF No. 3.)  For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

*I.      BACKGROUND*

This action arises out of the death of Mr. Kevin B. Whittaker ("Decedent") while he was incarcerated in the Southern Regional Jail ("SRJ") in Beckley, West Virginia.  (ECF No. 1-1 at 1, ¶ 1.)  According to the Second Amended Complaint, the Decedent was incarcerated at SRJ on or about February 16, 2019.  (ECF No. 1-1 at 3, ¶ 9.)  After the intake screening process, the Decedent was placed in general population in C-pod section 4, cell 12.  (*Id.*, ¶ 12.)  Then, three inmates allegedly entered the Decedent's cell and savagely beat him between approximately 8:36 and 8:46 p.m.  (*Id.* at 5, ¶ 18–19.)

Plaintiff Richard Whittaker ("Plaintiff"), as the Administrator of the Estate of Kevin B. Whittaker, commenced this action against the West Virginia Division of Corrections and Rehabilitation ("WVDCR") on December 13, 2019, in the Circuit Court of Kanawha County. (ECF No. 1 at 1, ¶ 2.)   In December 2021, Plaintiff filed a Second Amended Complaint against the WVDCR, Defendant Dakota Dove, and Defendants Athey and Warden.   (*See id.*, ¶ 4.)   On April 7, 2022, Defendants removed this matter to this Court.   (*See generally id.*)

The Second Amended Complaint asserts two causes of action.   Count One is a claim for "malicious conduct," asserted against the WVDCR.   (ECF No. 1-1 at 10; *see also id.* at 1 ("This civil action is brought against the [WVDCR] for malicious conduct.").)   Count Two is a claim brought under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment, asserted against Defendant Dakota Dove and Defendants Athey and Warden.   (*Id.* at 11; *see also id.* at 1 ("This cause of action i[s] brought against Dakota Dove, Angela Athey, and Larry Warden for civil rights violations . . . .").)

Defendants Athey and Warden filed the pending motion to dismiss on April 18, 2022. (ECF No. 3.)   Plaintiff responded, (ECF No. 6), and Defendants Athey and Warden replied, (ECF No. 7).   As such, this motion is fully briefed and ripe for adjudication.

## II.     *LEGAL STANDARD*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff,

the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."   *Id.*   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

## III.   DISCUSSION

Defendants Athey and Warden move to dismiss Count Two for two reasons.   First, Defendants Athey and Warden argue that Plaintiff failed to bring an action against them within the applicable statute of limitations.[1]   (ECF No. 4 at 4–6.)   Second, Defendants Athey and Warden claim that Plaintiff has failed to state a claim against them for deliberate indifference. (*Id.* at 6–7.)   Each is discussed below.

---

[1] Defendants Athey and Warden also seem to argue that Count One should be dismissed as untimely.   (*See* ECF No. 4 at 4–5.)   However, because Count One is only asserted against the WVDCR, (*see* ECF No. 1-1 at 1, 10), Defendants Athey and Warden lack standing to seek dismissal of that cause of action, *see E.E.O.C. v. Brooks Run Min. Co., LLC*, No. CIV.A. 5:08-CV-00071, 2008 WL 2543545, at *2 (S.D. W. Va. June 23, 2008) (Johnston, J.) ("It is generally accepted that parties lack standing to seek dismissal of parties other than themselves."); *accord Ohio Cas. Ins. Co. v. Mohan*, 350 F.2d 54, 57 (3d Cir. 1965) ("Ordinarily an order to dismiss is taken as running only in favor of the party who makes the motion to dismiss."); *Mantin v. Broadcast Music, Inc.*, 248 F.2d 530, 531 (9th Cir.1957) ("[T]he moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants."). Thus, the motion is **DENIED** insofar as Defendants Athey and Warden move to dismiss Count One as untimely.

Count Two of the Second Amended Complaint asserts a claim under 42 U.S.C. § 1983 for deliberate indifference.   (ECF No. 1-1 at 11–12.)   "In order to prevail on a [Section] 1983 claim, a plaintiff must show that the defendant deprived him of a right secured by the Constitution and laws of the United States and that the defendant acted under color of state law."   *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999)).   "The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."   *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991).

In this case, Count Two states that Defendants Athey and Warden "demonstrated deliberate indifference to the medical needs of Plaintiff's decedent," because the "[m]edical attention and care at the jail was wholly inadequate."   (ECF No. 1-1 at 12, ¶¶ 51–52.)   Yet, Defendants Athey and Warden move to dismiss Count Two by reason that Plaintiff failed to allege any facts that they were on notice that the inmates involved in the attack created an excessive risk to the Decedent's health or safety.   (ECF No. 4 at 7.)   Both theories based on medical care and risk of harm from other inmates are discussed below.

### A.  Medical care

An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs, one objective and one subjective.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013); *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.").   "Objectively, the inmate's medical condition must be 'serious'—'one that has been

4

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).   Knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842–43; *see also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it.").

The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03).   "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beron*, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds).   "[M]ere negligence or malpractice does not violate the Eighth Amendment."   *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Rather, "[d]eliberate indifference may be demonstrated by either actual intent or reckless disregard."   *Id.* (internal citations omitted).

In this case, Plaintiff alleges that, after the Decedent was attacked, he was observed to be "bloodied, bruised, and distressed," "in a state of acute medical crisis," and that "his distress was so patently obvious that even a lay person would recognize[] the need for medical attention." (ECF No. 1-1 at 10, ¶ 38–39.)   Plaintiff further claims that, despite WVDCR employees' duty to "monitor [the Decedent] and to alert medical personnel if his behavior was alarming," WVDCR employees ignored the Decedent.   (*Id.* ¶¶ 39–42.)   Due to these alleged omissions, Plaintiff

5

asserts that WVDCR staff "exhibited gross indifference" and "contributed to [the Decedent's] death[.]"  (*Id.* at 11, ¶ 43.)

However, Plaintiff has failed to allege facts that Defendants Athey and Warden's culpability satisfies the subjective prong of *Farmer*.  Although it is undisputed that Decedent's medical condition was serious, the Second Amended Complaint does not state that Defendants Athey and Warden knew of the Decedent's serious medical need.  (*See generally* ECF No. 1-1.) Plaintiff did not claim that Defendants Athey or Warden had knowledge of the attack on the Decedent or of his injuries.  (*Id.*)  In fact, Plaintiff does not even assert that Defendants Athey and Warden were in the facility during the attack or when medical care was needed.  (*Id.*)  Thus, Plaintiff failed to allege facts that Defendants Athey and Warden were deliberately indifferent to the Decedent's medical needs.

### B.  Risk of harm from other inmates

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates."  *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  This includes a duty to protect prisoners from violence at the hands of other prisoners.  *Id.* at 833; *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) ("The eighth amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm.").

"But a prison official will not be liable for failing to protect a prisoner from inmate violence unless two requirements are met."  *Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016) (citing *Farmer*, 511 U.S. at 834).  "First, the deprivation alleged must be, objectively, 'sufficiently

serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298).   In this case, the parties

do not dispute that Mr. Whittaker's injuries meet this standard.

The second requirement mandates that the prison official must have had a "sufficiently

culpable state of mind."  *Id.* (citation omitted).   "In prison-conditions cases," like this one, "that

state of mind is one of 'deliberate indifference' to inmate health or safety."  *Id.* (citation omitted).

"Deliberate indifference" requires "'more than mere negligence,' but 'less than acts or omissions

[done] for the very purpose of causing harm or with knowledge that harm will result.'"  *Makdessi*

*v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (alteration in original) (quoting *Farmer*, 511 U.S. at

835).   It is a subjective standard requiring that a prison official "both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the

inference."  *Farmer*, 511 U.S. at 837.   In addition to subjectively recognizing that substantial

risk, the prison official must also subjectively be aware that "his actions were 'inappropriate in

light of that risk.'"  *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting

*Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997)).

Whether a prison official acted with "deliberate indifference" is a question of fact that can

be proven through direct or circumstantial evidence.  *Makdessi*, 789 F.3d at 133; *Parrish*, 372

F.3d at 303.   A plaintiff can make a prima facie case of deliberate indifference "by showing 'that

a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly

noted by prison officials in the past, and the circumstances suggest that the defendant-official being

sued had been exposed to information concerning the risk and thus must have known about it.'"

*Parrish*, 372 F.3d at 303 (alteration in original) (quoting *Farmer*, 511 U.S. at 842).   A prison

official may not avoid liability simply because he was unaware that the inmate was "especially

likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843.  Still, "[o]rdinarily, [Plaintiff] cannot satisfy his burden of proof [of showing deliberate indifference] by pointing to a single incident or isolated incidents . . . ." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir.1984)).

Here, the Second Amended Complaint states that that Inmate Eugene Lane ("Inmate Lane") and Inmate Galen Stewart ("Inmate Stewart") "were the Pod Basses and operated the Pod through intimidation and violence."  (ECF No. 1-1 at 6, ¶ 25.)  Plaintiff alleges that, on October 28, 2018, former corrections officer, Scotty Moore ("Moore"), recommended to Defendant Warden that Inmate Lane be placed in administrative segregation "for his own safety needs . . . ." (ECF No. 1-1 at 6.)  On December 26, 2018, Moore allegedly recommended to Defendant Athey that Inmate Lane be placed in administrative segregation because "Lane pose[d] a threat not only to himself but to other inmates in [the] facility."  (*Id.* at 7.)  Yet, Defendants Athey and Warden purportedly ignore these warnings.  (*Id.* at 8.)  Then, Plaintiff claims that, six weeks later, Inmates Lane and Stewart "orchestrated" the attack on the Decedent, "which was carried out by three other inmates."  (*Id.* at 6, ¶ 24.)

However, Plaintiff has failed to allege that the risk of harm by Inmate Lane was "longstanding, pervasive, well-documented, or expressly noted by prison officials."  *See Parrish*, 372 F.3d at 303.  Plaintiff's theory relies on Moore's two recommendations to place Inmate Lane in administrative segregation.  Yet, these recommendations were based on Inmate Lane's interactions with *correctional officers*—not other inmates.  (*See* ECF No. 1-1 at 6–7.)  Further, Moore's recommendation on October 28, 2018, to Defendant Warden was for Inmate Lane's "own safety needs."  (*Id.* at 6.)  Thus, Plaintiff's claim rests on the single, isolated suggestion Moore

8

made to Defendant Athey based on the threat Inmate Lane posed to himself and other inmates. *Cf. Stroud*, 13 F.3d at 799.  Beyond this individual recommendation almost two months before the Decedent arrived at the facility, the Second Amended Complaint does not include any factual allegations that Defendants Athey and Warden had actual knowledge that Inmate Lane posed a danger to other inmates.  (*See generally* ECF No. 1-1.)  Consequently, Plaintiff has not alleged sufficient facts to permit the Court to draw a reasonable inference that Defendants Athey and Warden were on notice that Inmate Lane created an excessive risk of harm to other inmates, and, thus, are liable for the fact that the Decedent was attacked by other inmates.[2]

Accordingly, Count Two is **DISMISSED** as to Defendants Athey and Warden.[3]

### IV.    CONCLUSION

For these reasons, the pending Motion to Dismiss, (ECF No. 3), is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **DENIED** insofar as Defendants Athey and Warden moved to dismiss Count One based on the statute of limitations.  The motion is **GRANTED** as far as they argue that Plaintiff failed to state claim for deliberate indifference against them, and Count Two is **DISMISSED** as it relates to Defendants Athey and Warden.

**IT IS SO ORDERED**.

---

[2] Indeed, cases in which there was a showing of a substantial risk of inmate attack involved greater evidence.  For example, in *Odom v. South Carolina Department of Corrections*, the Fourth Circuit concluded the defendant officers were aware of facts allowing an inference of a substantial risk of serious harm where the plaintiff told the defendant officers other inmates were going to try to kill him, those inmates spent forty-five minutes successfully tearing down the chain-link fence separating them from the plaintiff, and other officers directed defendant officers to move the plaintiff.  349 F.3d 765, 767–78 (4th Cir. 2003).  There, "one of the inmates pulled a piece of chain link fence out of his back pocket and threatened to stab [the defendant guard, who] then withdrew, looking at [plaintiff] and stating 'I ain't f with you.'"  *Id.* at 768.  Similarly, in *Cox v. Quinn*, the plaintiff repeatedly reported "that he was being threatened and robbed," "repeatedly informed the [defendant officers] that he feared for his safety" and requested to be separated from the other inmates, "requested that the correctional officers not discuss his concerns with [the other inmates] because he feared that would put him at even greater risk," and "renewed his plea for help to" one of the defendant officers shortly before being attacked by the other inmates.  828 F.3d at 237.

[3] Because Count Two is dismissed for failure to state a claim, the Court declines to address the defendants' statute of limitations argument.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        November 3, 2022

_____

THOMAS E. JOHNSTON, CHIEF JUDGE

10