## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

RICHARD WITTAKER, et al.,

        Plaintiffs,

v.                              CIVIL ACTION NO.   2:22-cv-00167

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION, et al.,

        Defendants.


### MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Dismiss filed by Defendants Dakota Dove ("Dove"), Angela Athey ("Athey"), and Larry Warden ("Warden") (collectively "Individual Defendants").   (ECF No. 10.)   For the reasons discussed below, the motion is **DENIED**.

### I.     *BACKGROUND*

This action arises out of the death of Mr. Kevin B. Whittaker ("Decedent") while he was incarcerated in the Southern Regional Jail ("SRJ") in Beckley, West Virginia.   (ECF No. 1-1 at 1, ¶ 1.)   According to the Second Amended Complaint, the Decedent was incarcerated at SRJ on or about February 16, 2019.   (ECF No. 1-1 at 3, ¶ 9.)   After the intake screening process, the Decedent was placed in general population in C-pod section 4, cell 12.   (*Id.*, ¶ 12.)   Then, three inmates allegedly entered the Decedent's cell and "savagely beat him" between approximately 8:36 and 8:46 p.m.   (*Id.* at 5, ¶ 18–19.)

1

Plaintiff Richard Whittaker ("Plaintiff"), as the Administrator of the Estate of Kevin B. Whittaker, commenced this action against the West Virginia Division of Corrections and Rehabilitation ("WVDCR") on December 13, 2019, in the Circuit Court of Kanawha County. (ECF No. 1 at 1, ¶ 2.)   In December 2021, Plaintiff filed a Second Amended Complaint against the WVDCR and the Individual Defendants.   (*See id.*, ¶ 4.)   On April 7, 2022, Defendants removed this matter to this Court.   (*See generally id.*)

The Second Amended Complaint asserts two causes of action.   Count One is a claim for "Malicious Conduct," asserted against the WVDCR.   (ECF No. 1-1 at 10; *see also id.* at 1 ("This civil action is brought against the [WVDCR] for malicious conduct.").)   Count Two is a claim brought under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment, asserted against the Individual Defendants.   (*Id.* at 11; *see also id.* at 1 ("This cause of action i[s] brought against Dakota Dove, Angela Athey, and Larry Warden for civil rights violations . . . .").)   However, the Count dismissed Count One, as well as Count Two against Defendants Athey and Warden, in previous orders.   (*See* ECF Nos. 3, 8.)   Thus, only Count Two against Defendant Dove remains.

The Individual Defendants filed the pending motion to dismiss on May 16, 2022.[1]   (ECF No. 10.)   To date, Plaintiff has not filed a response.   As such, this motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

---

[1] Because Defendants Athey and Warden have been dismissed from this case, they no longer have standing to move for dismissal.   *See E.E.O.C. v. Brooks Run Min. Co., LLC*, No. CIV.A. 5:08-CV-00071, 2008 WL 2543545, at *2 (S.D. W. Va. June 23, 2008) (Johnston, J.) ("It is generally accepted that parties lack standing to seek dismissal of parties other than themselves."); *accord Ohio Cas. Ins. Co. v. Mohan*, 350 F.2d 54, 57 (3d Cir. 1965) ("Ordinarily an order to dismiss is taken as running only in favor of the party who makes the motion to dismiss."); *Mantin v. Broadcast Music, Inc.*, 248 F.2d 530, 531 (9th Cir.1957) ("[T]he moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants.").   As such, the Court will address only Defendant Dove in resolving the pending motion.

2

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III.    DISCUSSION

Count Two of the Second Amended Complaint asserts a claim against Defendant Dove,[2] pursuant to 42 U.S.C. § 1983 for deliberate indifference to a serious medical need, in violation of

---

[2] The pending motion to dismiss also includes arguments that Count Two should be dismissed against Defendants Athey and Warden because (1) they did not know of the danger Inmate Lane posed, (ECF No. 11 at 6 – 7), and (2) they are entitled to qualified immunity, (*id.* at 8–10). However, these arguments are **DENIED AS MOOT** because Count Two was already dismissed as to Defendants Athey and Warden in a previous Memorandum Opinion and

the Eighth Amendment of the United States.   (ECF No. 1-1.)   In the pending motion to dismiss, Defendant Dove argues that his actions do not amount to a constitutional violation and that he is entitled to qualified immunity.   (ECF No. 11.)

Section 1983 subjects to civil liability any person who, acting under color of state law, deprives an individual of his or her constitutional or federal rights.   42 U.S.C. § 1983; *see also Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999)).   Qualified immunity is "an immunity from suit rather than a mere defense to liability."   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thus, the Court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the Plaintiff, the Court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation.   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   If the answer to either question is no, then Defendant Dove is entitled to qualified immunity.

A. *Constitutional Violation*

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those

---

Order, as discussed above.

4

convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991).   An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs, one objective and one subjective.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013); *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.").

"Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"   *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."   *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03).   To prove a prison official acted with deliberate indifference, a plaintiff must establish that the official "[knew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Id.* at 837; *see Thorpe v. Clarke*, 37 F.4th 926, 933 (4th Cir. 2022); *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (citation omitted) (finding that "deliberate indifference requires that the official have 'had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction'"); *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Such indifference can be displayed, through the response to an inmate's medical needs, "including ignoring an inmate's serious condition or delaying medically necessary treatment."   *Abraham v.*

*McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) (citing *Estelle*, 429 U.S. at 105–06). "Deliberate indifference is 'more than mere negligence,' but 'less than acts of omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Scinto*, 841 F.3d at 225 (quoting *Farmer*, 511 U.S. at 837); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (holding that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness"). This standard can be satisfied by "prov[ing] by circumstantial evidence that the risk was so obvious that it had to have been known." *Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015); *see also Farmer*, 511 U.S. at 842–43 (explaining that knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious"); *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it.").

In this case, Defendant Dove testified that he checked on the Decedent at 7:45 p.m., and found the Decedent was fine.[3]   (ECF No. 1-1 at 3, ¶ 15; *see also* ECF No. 1-3 at 76.)   Then, Plaintiff claims that three inmates entered the Decedent's cell and assaulted him between approximately 8:36 and 8:46 p.m.   (*Id.* at 5, ¶ 18–19.)   After that, the Decedent's cellmate allegedly stated that the Decedent was crying and had blood and knots on his head.   (*Id.* at 9, ¶

---

[3] In reviewing the sufficiency of a complaint, a court is generally limited to the four corners of that document and "documents incorporated into the complaint by reference." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.2011) (citation omitted); Fed.R.Civ.P. 10(c).   Consideration of extrinsic evidence converts a motion to dismiss into a motion for summary judgment.   Fed.R.Civ.P. 12(d).   The Fourth Circuit recognizes an exception to this general rule, providing that a court may consider documents attached to a motion to dismiss so long as they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity."  *Am. Chiropractic Ass'n v.. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)).   Here, Plaintiff relies upon and quotes Defendant Dove's deposition testimony in the Second Amended Complaint.   (*See, e.g.,* ECF No. ECF No. 1-1 at 3, ¶ 15.)   Thus, the Court can consider the deposition transcript in resolving the pending motion to dismiss.   (*See* ECF No. 1-3.)

33.)   The Second Amended Complaint also states that the investigating trooper described blood scattered throughout the Decedent's cell.   (*Id.* ¶ 34.)   Plaintiff claims that the Decedent was "clearly in a state of acute medical crisis," "his condition pointed very clearly to an objectively serious need for help," and "[h]is distress was so patently obvious that even a lay person would recognize[] the need for medical intervention."   (*Id.* ¶ 35.)

Defendant Dove testified that he checked on the Decedent again between 8:36 p.m. and 9:42 p.m., (ECF No. 1-3 at 76–77), but Plaintiff asserts that there is no record of these security checks in the Tower Logs, (ECF No. 1-1 at 5–6, ¶¶ 22–23).   Instead, Plaintiff alleges that the WVDCR staff did not help the Decedent or get him the medical interventions he needed and allegedly "took active steps to ensure that [the Decedent] could be comfortably ignored, by leaving hi[m] beat[ened] and bloodied in his cell even though [Defendant] Dove testified under oath that he performed two security checks on [the Decedent]" after the attack.   (ECF No. 1-1 at 9–10, ¶ 36.)   The Second Amended Complaint does state, though, that the Tower Logs indicate that Defendant Dove relieved another security officer at 9:42 p.m. and radioed that officer at 10:03 p.m. to check on the Decedent because his intercom was activated.   (*Id.* at 5, ¶ 21.)   After that, medical aid was administered to the Decedent, who was eventually transported to the Beckley Appalachian Regional Health Emergency Department but was dead upon arrival.   (*Id.* at 9, ¶¶ 30–31.)

In the pending motion to dismiss, while Defendant Dove does not dispute that the Decedent had a serious medical need, he claims that he did not know of this serious medical need.   (ECF No. 11 at 4.)   Instead, the Defendant Dove argues that Plaintiff only alleges that Defendant Dove was negligent by failing to check on the Decedent often enough, which is insufficient to maintain

an action for Eighth Amendment violations.  (*Id.* at 8.)  Further, Defendant Dove argues that, once he was notified of the problem, he acted appropriately by requesting that another officer check on the Decedent.  (*Id.* at 4.)

Plaintiff did not respond to this argument, and, as such, conceded this issue.  *See Fields v. King*, 576 F. Supp. 3d 392, 408 (S.D. W. Va. 2021) (collecting cases).  However, the Court is not convinced.  Importantly, Defendant Dove fails to address the fact that he testified that he *did* check on the Decedent sometime after the attack.  (ECF No. 1-1 at 5, ¶ 22; *see also* ECF No. 1-3 at 75–76.)  Although this testimony conflicts with the Tower Logs, the Court must resolve all doubts and inferences in favor of the plaintiff and view the allegations in a light most favorable to the plaintiff.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

Applying this standard, Plaintiff alleges facts that make it plausible that Defendant Dove knew of the Decedent's serious medical condition.  Defendant Dove testified that he checked on the Decedent sometime between 8:36 p.m. and 9:42 p.m.—*i.e.*, after the Decedent was allegedly attacked.  (ECF No. 1-1 at 5, ¶ 22; *see also* ECF No. 1-3 at 76–77.)  Assuming the truth of Plaintiff's allegations, at that time, the Decedent was crying and had blood and knots on his head, and there was blood scattered throughout the Decedent's cell.  (ECF No. 1-1 at 9, ¶¶ 33, 34.)  Taking these facts as true, it is plausible that the Decedent's serious medical condition was "so obvious that it had to have been known."  *See Makdessi*, 789 F.3d at 136.  As such, it is plausible that Defendant Dove had sufficient knowledge of the Decedent's serious medical condition.  (*See id.* at 5, ¶ 21.)

Yet, Defendant Dove did not respond to the Decedent until he later activated his intercom at 10:03 p.m.  (*Id.* at 5, ¶ 21.)  Where a deliberate indifference claim is predicated on a delay in

8

medical care, the Fourth Circuit has ruled that "there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'"   *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (quoting *Webb v. Hamidullah*, 281 F. App'x 159, 166-67 (4th Cir. 2008)); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).   In this case, the Decedent was alive after the attack, which allegedly occurred between 8:36 p.m. and 8:46 p.m. (ECF No. 1-1 at 5, ¶¶ 18–19.)   The Decedent was alive when he activated his intercom at 10:03 p.m.   (*Id.* at 5, ¶ 21.)   The Decedent was alive approximately 90 minutes after the attack while the WVDCR and PrimeCare Medical of West Virginia rendered him first aid.   (*Id.* at 9, ¶ 30.) However, the Decedent was dead by 11:00 p.m.—almost two and a half hours after the attack. (*Id.* ¶ 31.)

So, the question is, if aid had been rendered sooner, would the Decedent have survived? Resolving all doubts and inferences in favor of the plaintiff, *Edwards*, 178 F.3d at 243–44, it is plausible that the answer is "yes," and the delay in medical aid exacerbated the Decedent's condition, *see Formica*, 739 F. App'x at 755.   If nothing else, it is plausible that the delay "unnecessarily prolonged" the Decedent's pain.   *See Sharpe*, 621 F. App'x at 734.   Thus, Plaintiff has alleged sufficient facts to make a plausible showing that Defendant Dove was deliberately indifferent to the Decedent's serious medical needs.

B.  *Clearly Established Law*

"When determining whether a right was 'clearly established,' '[t]he dispositive question is whether the violative nature of particular conduct is clearly established.'"  *Murray v. Lilly*, 426 F. Supp. 3d 245, 255 (S.D. W. Va. 2019) (internal citation omitted).   "To be 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Id.* (same).   Thus, a "clearly established right" should not be defined broadly or "at a high level of generality."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).   Still, "there is no requirement that the 'very action in question [must have] previously been held unlawful' for a reasonable official to have notice that his conduct violated that right.'"  *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016); *see also al-Kidd*, 563 U.S. at 741 (explaining that "a case directly on point [is not required], but existing precedent must have placed the statutory or constitutional question beyond debate").

The right to be free from deliberate indifference to serious medical needs is clearly established.  *Knouse v. Primecare Med. of W. Virginia*, 333 F. Supp. 3d 584, 590 (S.D. W. Va. 2018).   As stated by the Fourth Circuit, "[a] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976 and, thus, was clearly established at the time of the events in question."  *Stansberry*, 841 F.3d at 236.   Specifically, it is clearly established that "unreasonable delay in providing medical treatment where the need for such treatment is apparent" constitutes a due process violation.  *Gray v. Farley*, 13 F.3d 142, 146 (4th Cir. 1993) (quoting *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988)).

Thus, because it is plausible that Defendant Dove violated the Decedent's Eighth Amendment rights and that the law was clearly established at the time of the alleged violation, Defendant Dove is not entitled to qualified immunity on Plaintiff's § 1983 claim.

Accordingly, the motion is **DENIED** on Count Two as to Defendant Dove.

*IV.   CONCLUSION*

For the reasons discussed above, the Individual Defendants' Motion to Dismiss, (ECF No. 10), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      November 3, 2022

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

11